1
2
3
4
5
6
7
8
9      **UNITED STATES DISTRICT COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

11

12 JERONIMO PONCE ULLOA,   ) Case No. ED CV 15-00031-AS
            )
13      Plaintiff,  ) **MEMORANDUM OPINION**
            )
14   v.       )
            )
15 CAROLYN W. COLVIN, Acting )
 Commissioner of Social  )
16 Security,      )
            )
17      Defendant.  )

18

19

20         **PROCEEDINGS**

21   On January 6, 2015, Plaintiff, represented by counsel, filed a

22 Complaint seeking review of the denial of his application for Disability

23 Insurance Benefits.  (Docket Entry No. 6).  The parties have consented

24 to proceed before the undersigned United States Magistrate Judge.

25 (Docket Entry Nos. 12, 14).  On May 21, 2015, Defendant filed an Answer

26 along with the Administrative Record ("AR").  (Docket Entry Nos. 16-17).

27 The parties filed a Joint Position Statement ("Joint Stip.") on August

28

19, 2015, setting forth their respective positions regarding Plaintiff's claims.  (Docket Entry No. 19).


The Court has taken this matter under submission without oral argument.  See C.D. Cal. L.R. 7-15; "Order Re: Procedures in Social Security Case," filed January 18, 2015 (Docket Entry No. 10).


## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On April 12, 2011, Plaintiff, formerly employed as a rehabilitation counselor and rehabilitation supervisor for the California Department of Rehabilitation (see AR 58, 221), filed an application for Disability Insurance Benefits, alleging a disability since December 15, 2005.  (AR 208-11).  On September 5, 2012 (the initial hearing) and March 13, 2013 (the supplemental hearing), the Administrative Law Judge ("ALJ"), Joseph D. Schloss, heard testimony from Plaintiff (who was represented by counsel), medical expert James Haynes, and vocational expert Troy Scott.  (See AR 32-53, 56-82).  On March 22, 2013, the ALJ issued a decision denying Plaintiff's application.  (See AR 16-26).  The ALJ found that, through the date last insured (December 31, 2011, AR 18), Plaintiff had severe impairments -- "diabetes mellitus; atrial fibrosis; spine disorder; kidney problem (constant urination); hip pain; vision problem; hypertension; mild peripheral neuropathy; and insomnia" (AR 18-19) -- but did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment (AR 19), and had

the residual functional capacity ("RFC")[1] to perform light work[2] with the following limitations: lifting and carrying 20 pounds occasionally and ten pounds frequently; standing and walking for 6 hours in an 8-hour workday with changing position every 30 minutes; sitting for 6 hours in an 8-hour workday with changing position every 1 hour; occasionally walking on uneven terrain; no climbing ladders, ropes or scaffolds; no working at heights, no working with heavy machinery or vibratory tools; and occasional bending, kneeling, stooping, crawling and crouching. (AR 19-25). After finding that Plaintiff was able to perform his past relevant work as a rehabilitation counselor and rehabilitation supervisor as actually and generally performed, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 25-26).

Plaintiff requested that the Appeals Council review the ALJ's decision. (AR 8-11). The request was denied on November 3, 2014. (AR 1-5). The ALJ's decision then became the final decision of the Commissioner, allowing this Court to review the decision. See 42 U.S.C. §§ 405(g) and 1383(c).

---

[1]   A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[2]   "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b) and 416.967(b).

1

2

**PLAINTIFF'S CONTENTIONS**

3

Plaintiff alleges that the ALJ failed to properly (1) reject the

4
opinion of Plaintiff's treating physician, Dr. Serina; and (2) determine

5
whether Plaintiff could perform his past relevant work. (See Joint

6
Stip. at 4-11, 15-21).

7

8

**DISCUSSION**

9

10
After consideration of the record as a whole, the Court finds that

11
the Commissioner's findings are supported by substantial evidence and

12
are free from material legal error.[3]

13

14
**A.   The ALJ Properly Rejected the Opinion of Plaintiff's Treating**

15
**Physician, Enna Serina, M.D.**

16

17
Plaintiff asserts that the ALJ failed to provide specific and

18
legitimate reasons for rejecting the opinion of Plaintiff's treating

19
physician, Dr. Serina. (See Joint Stip. at 4-11, 13-14).[4]   Defendant

20
asserts that the ALJ provided proper reasons for rejecting Dr. Serina's

21

22
opinion. (See Joint Stip. at 11-13).

23

24

25

26
[3]   The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

27

28

[4]   Plaintiff mistakenly refers to Dr. Serina as Euia Serina. Dr. Serina's first name is Enna. (See AR 531, 540).

4

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 416.927(b)-(d). If a treating doctor's opinion is not contradicted by another doctor, the ALJ can reject the treating doctor's opinion only for "clear and convincing reasons." <u>Carmickle v. Commissioner</u>, 533 F.3d 1155, 1164 (9th Cir. 2008); <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). If the treating doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the treating doctor's opinion. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007l); <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998); <u>Lester v. Chater</u>, <u>supra</u>.

Enna Serina, M.D., a physician at Kaiser Permanente, treated Plaintiff from November 29, 2006 to September 23, 2012. (<u>See</u> AR 297-301, 308, 315-20, 323-32, 335-40, 343-49, 403-14, 442-49, 464-73, 512-22, 527 [stating that, as of January 18, 2012, she had had contact with Plaintiff for 7 years, every 2 to 4 months], 528-31).[5] In a Diabetes

---

[5] <u>See also</u> AR 539-40, 544, 548-49, 553-54, 558-62, 567-68, 590-91, 597-98, 602-03, 616, 621-24, 652-58, 670-71, 675-80, 685-86, 689-91, (continued...)

Mellitus Residual Functional Capacity Questionnaire dated January 18, 2012, Dr. Serina diagnosed Plaintiff with spinal stenosis, degenerative disc disease, diabetes, and paroxysmal atrial fibrillation. (AR 527). Dr. Serina identified Plaintiff's symptoms as fatigue, extremity pain and numbness, difficulty walking, episodic vision blurriness and rapid heart beat/chest pain. (Id.). Dr. Serina identified the clinical findings as "tenderness to palpitation lumbar spinosis processes." (AR 528). Dr. Serina opined that Plaintiff had the following functional limitations: can sit for 30 minutes, and for about 4 hours in an 8-hour workday; can stand for 15 minutes, can stand/walk less than 2 hours in an 8-hour workday, and every 30 minutes must walk for 10 minutes; needs to shift positions at will from sitting, standing or walking; sometimes needs to take unscheduled breaks (how often depends on symptoms) for 15 minutes before returning to work; can frequently lift less than 10 pounds, can occasionally lift 10 to 20 pounds, and can never lift 50 pounds; has significant limitations in reaching, handling or fingering, specifically with respect to reaching above shoulder (a 70% limitation in both arms); can occasionally bend and twist; is moderately limited in the ability to deal with work stress; and likely will be absent from work an average of about 3 times a month as a result of his impairments. (AR 528-31).

///

///

---

[5] (...continued)
694-95, 699-701, 705-07, 711, 716, 721-24, 736, 740-46, 755, 818-21, 825-26, 842, 846, 871-73.

The ALJ addressed Dr. Serina's opinion as follows:

> The undersigned gives little weight to the opinions and findings of Dr. Serina (Ex. 7F), including that the claimant can stand and walk less than two hours in an eight-hour workday, and sit for four hours in an eight-hour workday, and he would miss work three days in a month. Dr. Serina's opinions are without substantial support from ongoing objective clinical or diagnostic findings, which renders this opinion less persuasive. Moreover, the opinion expressed is conclusory, providing very little explanation of the evidence relied on in forming that opinion. That opinion concerns a matter reserved to the Commissioner and is not supported by longitudinal clinical presentation, type of and response to treatment, admitted daily activities, or sustained objective evidence for any 12-month period.

(AR 25).

The ALJ properly discredited Dr. Serina's opinion because it was not supported by the objective medical evidence and was conclusory. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)

(ALJ properly discounted treating physician's opinion for being "so extreme as to be implausible" and "not supported by any findings" where there was "no indication in the record what the basis for these restrictions might be"); Magallanes v. Bowen, supra, 881 F.2d at 752 (ALJ's decision to reject the treating physician's opinion due to a lack of medical evidence was sufficiently "specific and legitimate" and based on substantial evidence in the record).

Although Plaintiff points to evidence supporting the existence of his physical impairments (i.e., atrial fibrillation, spinal stenosis of spinal region, diabetes, positive back pain, tender to palpation lumbar spinous processes, and foot pain), see Joint Stip. at 9, citing AR 353, 432, 513-14, 517-18, Plaintiff has not cited to any evidence in Dr. Serina's treatment records that support the restrictive limitations to which she opined.

As the ALJ found, the objective clinical or diagnostic findings do not support Dr. Serina's opinion concerning Plaintiff's limitations, specifically with respect to Plaintiff's abilities to stand, walk, sit and overhead reach and with respect to the number of days of work Plaintiff likely will miss each month.

The Kaiser Permanente records of Plaintiff's examinations do not contain findings that would support Dr. Serina's overly restrictive limitations.

<u>2006</u>

On November 29, 2006, Dr. Serina found that Plaintiff had no acute distress, a normal heart rate, a non-distended and non-tender abdomen, and no edema (swelling) in the extremities.   <u>See</u> AR 297-308.

<u>2008</u>

On January 30, 2008, Dr. Serina noted that Plaintiff was taking medication for hyperlipidemia without any side effects, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, and no edema in the extremities. (AR 323-32). On March 4, 2008, Dr. Serina noted that Plaintiff was taking medications for diabetes mellitus without any side effects, medications for hypertension and was doing well, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, and no edema in the extremities. (AR 335-40).  On June 3, 2008, Dr. Serina found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities, pupils were equal, round, and reactive to light and accommodation, extraocular movement was intact, eyes did not contain foreign bodies, and normal ears, sinuses, throat and neck. (AR 343-49).  On October 29, 2008, Dr. Serina found that Plaintiff had no distress, normal head, ear, nose and throat, mild to moderate edema of the lower lip (but no erythema or tenderness), normal eyes, normal range of the motion of the neck, normal heart rate, normal pulmonary/chest, no problem with his feet, and no cervical adenopathy. (AR 352-64).  On July 9, 2009, Dr. Serina noted that

9

Plaintiff's atrial fibrillation with a rapid ventricular rate had been successfully controlled with Atenolol (which Plaintiff had stopped taking because of side effects) and that Plaintiff's hypertension was controlled, and found that Plaintiff had no distress, a normal heart rate, and no respiratory distress. (AR 393-400).

2009

On July 30, 2009, Dr. Serina noted that, following a July 9, 2009 visit, Plaintiff had restarted medications for diabetes mellitus and hypertension but not the Atenol (because Plaintiff thought it made him tired) and that Plaintiff's blood pressure was stable and had improved with weight loss and change in diet, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities, and normal ears, sinuses, throat and neck. (AR 403-14). On July 31, 2009, Dr. Serina noted that Plaintiff's paroxysmal atrial fibrillation had recently converted to a regular sinus rhythm, and found that Plaintiff was oriented and not in distress, Plaintiff's head was normocephalic and atraumatic, Plaintiff's right and left eyes exhibited no discharge and no scleral icterus, Plaintiff's neck had a normal range of motion, Plaintiff had a normal heart rate, Plaintiff had normal breath sounds and did not have respiratory distress, Plaintiff had a normal range of motion and did not have edema, and Plaintiff was alert and oriented. (AR 417-23.  A September 6, 2009 emergency room visit for chest pain revealed nothing unusual except faint heart sounds. (AR  262-67). On September 15, 2009, Dr. Serina noted that Plaintiff had another episode

of fast atrial fibrillation (but that his symptoms were stable and that he was able to walk 30 to 60 minutes a day and 7 times a week) and that a foot X-ray showed a linear small fracture ("There is a fracture of the distal mid-shaft of the first proximal phalanx."), and found the same findings as on July 31, 2009. (AR 426-34). A November 3, 2009 testing of Plaintiff's heart showed no perfusion defect, normal wall motion and thickening, left ventricular ejection fraction was greater than 65 percent, and "no evidence of infarct or ischemia." (AR 757). On December 9, 2009, Dr. Serina noted that Plaintiff had changed medications and reduced the amount of one medication for his diabetes mellitus, Plaintiff was taking Lisinopril for hypertension without side effects and Lovastatin for hyperlipedemia without side effects, and had not had another atrial fibrillation episode in the past 3 months, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities, and normal ears, sinuses, throat and neck. (AR 442-49).

2011

On January 17, 2011, Dr. Serina noted that Plaintiff's last paroxysmal atrial fibrillation episode was one year ago, in the past year Plaintiff's heart began to beat irregularly only once (for which Plaintiff took medication), and Plaintiff's blood pressure had been better since he cut back on alcohol, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities and no lesions and intact sensation in the feet. (AR 464-73). On May 6, 2011, Dr. Serina

sent a letter to Plaintiff stating that his hemoglobin A1c (average sugar test) and cholesterol were good and that his liver test was higher than normal but a little better than before. (AR 539-40).  On July 6, 2011, Dr. Serina noted that Plaintiff's sugar level was lower due to a changed diet and weight loss, and Plaintiff was taking medications regularly for hypertension, and found that Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, and no edema in the extremities. (AR 558-62).  On July 20, 2011, Dr. Serina found that Plaintiff had no distress, no neck, pulmonary/chest or abdominal issues, a normal range of motion, and was alert and oriented. (AR 579-87).  An August 25, 2011 eye examination revealed no remarkable findings, and assessed refraction disorder. (AR 640-44).  On October 6, 2011, Dr. Serina noted that Plaintiff's potassium, kidneys, cholesterol and hemoglobin A1c tests were normal and that his liver tests were back to normal. (AR 655-58).  An October 4, 2011 blood pressure check, noted that Plaintiff said he had been feeling well and reported no significant medication side effects. (AR 665-66).  On December 29, 2011, Dr. Serina, after stating that Plaintiff "[w]ants to try to get social security disability for [diabetes mellitus]," noted that Plaintiff complained of trouble sleeping due to back pain or having to urinate, complained of right foot pain (which he claimed to have suffered for seven years) and stated that podiatry had recommended shoe inserts which had not helped, and complained of chronic low back pain caused by a degenerative disc disorder and spinal stenosis (which he claimed to have suffered for more than 30 years), and found that

Plaintiff had no acute distress, a normal heart rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities, no lesions and intact sensation in the feet (non-tender to palpation), a negative straight leg raise and "tender to palpation lumbar spinous processes," and a mildly enlarged prostate, and made the following assessments: hyperlipidemia, stable and Plaintiff should continue medications; hypertension, slightly elevated blood pressure but is normal at home; atrial fibrillation, stable, and Plaintiff should continue medications; spinal stenosis of lumbar region, chronic low back pain, but Plaintiff declines further treatment at this time; foot pain, but Plaintiff declines further evaluation or treatment and should follow up with podiatry if pain persists. (AR 512-22, 675-86).

2012

On May 10, 2012, Dr. Serina found that Plaintiff had no acute distress, a normal hear rate, clear lungs, a non-distended and non-tender abdomen, no edema in the extremities, no lesions and intact sensation in the feet. (AR 740-46). An August 23, 2012 eye examination assessed a cataract in the left eye causing vision problems. (AR 802-09). A September 21, 2012 cataract preoperative examination noted that Plaintiff was complaining of decreased vision, and found that Plaintiff had a regular heart rate, clear lungs, a benign abdomen, no acute changes in the extremities, and was alert. (AR 850-52). In a progress noted dated September 26, 2012, Dr. Serina noted that Plaintiff's liver test was higher than before (and asked how much alcohol Plaintiff was drinking) and that Plaintiff's urine test showed more protein than

13

before (and asked whether Plaintiff was taking Lisinopril daily). (AR 871-73).

As discussed by the ALJ (see AR 22), an X-ray of Plaintiff's lumbar spine does not contain findings that would support Dr. Serina's overly restrictive limitations.  A California Care Medical Group report of an x-ray of the lumbar spine taken on September 19, 2011 states: "There is no indication of old or acute fracture and no destructive bone changes. A grade II spondylolisthesis of L5 over S1 is noted with associated severe narrowing of the L5/S1 disc.  There is also degenerative disc L4/5 apparent as related marginal osteophytes and moderate narrowing of the disc.  The interpedicular distances are average.  Modest marginal osteophytes are noted on the vertebral bodies with well maintained, normal inter-vertebral discs.  The sacro-iliac joints are normal.  The component bones exhibit mineralization consistent with age.  [¶] Impression: Grade II spondylolisthesis of L5 over S1 with severe degenerative arthritis L5/S1 and moderate degenrative disc L4/5." (AR 510).  The X-rays of the right and left hips were negative.  (Id.).

As the ALJ noted (see AR 22), the one record concerning Plaintiff's right shoulder also does not contain findings which would support Dr. Serina's overly restrictive limitations.  A California Care Medical Group report of an X-ray taken on November 10, 2011 revealed the following with respect to Plaintiff's right shoulder: "[Normal] osseous integrity for scapula, clavicle and upper third of humerus.  There is no

dislocation.   The gleno-humeral joint is normal.   There is an osteophyte arising from the acromion and directed inferiorly and medially.   No abnormal soft tissue calcification noted. [¶] Impression: Acromial spur." (AR 509).[6]

The ALJ also noted that Plaintiff's high blood pressure readings were 123/76 and 136/84. (See AR 22, citing AR 447 [123/76 on December 9, 2009] and AR 851 [136/84 on September 21, 2012].   Contrary to the ALJ's statement, Plaintiff had other high blood pressure readings.[7] (See AR 298 [142/90 on November 29, 2006]; 344 [136/94 on June 3, 2008]; 367 [151/91 on March 27, 2009]; 458 [144/88 on January 14, 2011]; 466 [154/91 on January 17, 2011]; 482 [154/98 on April 27, 2011]; 558 [159/70 on July 6, 2011]; 579 [147/93 on July 20, 2011]; 514, 675 [146/90 on December 29, 2011]; and 728 [143/73 on April 12, 2012].   Nonetheless, as the ALJ found (see AR 22), Plaintiff's hypertension has

---

[6]    It is not clear from the record whether Plaintiff received chiropractic treatment for his right shoulder from Pamela M. Wachholz, D.C.   (See AR 494-507).   However, the chiropractic records reflect that on December 23, 2010, Plaintiff stated that he suffered right shoulder pain of 7 or 8 out of 10 when he laid down on his shoulder and that ice helped the pain a little (see AR 504); on December 30, 2010, there is a notation about treating the right shoulder with "ice/heat" (see AR 505); on February 18, 2011, Plaintiff wanted to know what was going on with his right shoulder (see AR 503); and on October 12, 2011, Plaintiff's right shoulder was better (see AR 502).

[7]    Stystolic blood pressure (the top number) of 140 or higher is considered to be hypertension or high blood pressure.   Diastolic blood pressure (the bottom number) of 90 or higher is considered to be hypertension or high blood pressure.   See www.heart.org/HEARTORG/Conditions/HighBloodPressure/AboutHighBloodPressure/Understanding-Blood-Pressure-Readings_UCM_301764_Article.jsp#.vmX4Vk-VP5o; www.webmd.com/hypertension-high-blood-pressure/guide/diastolic-and-stystolic-blood-pressure-know-your-numbers.

generally been controlled. (See AR 324 [128/83 on January 30, 2008];
336-37 [124/83 on March 4, 2008, noting that Plaintiff was taking
medications for hypertension and was doing well]; 344 [136/94 on June 3,
2008]; 356 [132/78 on October 29, 2008]; 394-95 [118/87 on July 9, 2009,
noting that Plaintiff's hypertension was controlled]; 405-06 [116/64 on
July 30, 2009, noting that Plaintiff's blood pressure was stable and had
improved with weight loss and change in diet, and that Plaintiff's blood
pressure was stable even though he stopped taking medications]; 418
[131/85 on July 31, 2009]; 264 [116/72 on September 6, 2009]; 427
[137/86 on September 15, 2009]; 757 [139/71 on November 3, 2009]; 444
[123/76 on December 9, 2009]; 453 [120/80 on October 22, 2010]; 465-66
[January 17, 2011, noting that Plaintiff stated his blood pressure has
lowered since he cut back on alcohol 7 days earlier]; 610 [131/81 on
August 5, 2011]; 489 [134/86 on August 6, 2011]; 616 [123/78 on August
17, 2011]; 715 [115/74 on August 25, 2011]; 667 [102/64 on October 4,
2011]; 515, 678 [December 29, 2011, noting that Plaintiff's blood
pressure was slightly elevated that day but was normal at home]; 742
[138/76 on May 10, 2012]; and 851 [136/84 on September 21, 2012].  In
any event, the existence of some high blood pressure readings does not
support Dr. Serina's overly restrictive limitations.

Moreover, to the extent that Plaintiff is contending that the ALJ
improperly rejected Dr. Serina's opinion that Plaintiff was only able to
stand/walk for less than 2 hours in an 8-hour workday based on the
opinion of the examining physician, Robert Nguyen, M.D. (Board Certified

16

Internal Medicine), who on August 6, 2011 opined <u>inter</u> <u>alia</u> that Plaintiff could stand and walk 6 hours in an 8-hour workday (<u>see</u> AR 491; <u>see also</u> AR 24 [the ALJ gave Dr. Nguyen's opinion significant weight][8], <u>see</u> Joint Stip. at 7-8, the ALJ provided a specific and legitimate reason based on substantial evidence. <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)(an examining physician's opinion may constitute substantial evidence to reject a treating physician's opinion).

Dr. Nguyen's opinion about Plaintiff's ability to stand and walk 6 hours in an 8-hour workday was based on his own clinical findings -- Plaintiff's blood pressure was 134/86, and there were no remarkable findings in the physical examination (normal results for Plaintiff's bilateral hand grip strength, skin, lymphatics, head, ears, eyes, nose and throat, neck, chest/lungs, cardiovascular, and abdomen, musculoskeletal, neck and back, except for "some tenderness to palpation with right arm abduction" and "mild lower back pain to straight leg

---

[8]    The ALJ wrote:

The undersigned also gives significant weight to the opinion of the consultative examiner, Dr. Nguyen (Ex. 3F). In particular, the claimant can occasionally lift and carry 20 pounds and frequently lift and carry 20 pounds; he can stand and walk for six hours in an eight-hour workday; and he can occasionally bend, kneel, stoop, crouch and crawl. This aspect of the residual functional capacity assessed by the consultative examiner is reasonable and consistent with the objective medical evidence and Dr. Haynes's assessment. The claimant's subsequent medical records do not document any significant changes in the claimant's conditions to justify additional limitations. Further, there is no medical source opinion that contradicts this doctor's opinion.

raising test") or in the neurological examination (except for sensory being diminished to touch and vibrations on both feet), see AR 489-90 -- and was consistent with medical expert James Haynes' testimony (see AR 34).  See Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007)("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'"); Tonapetyan v. Halter, supra ("[T]he examining physician's] opinion alone constitutes substantial evidence, because it rests on his own independent examination of" [the claimant].").[9]

**B.    The ALJ Properly Determined that Plaintiff Could Perform His Past Relevant Work**

Plaintiff asserts that the ALJ failed to properly determine that Plaintiff could perform his past relevant work as a rehabilitation counselor and rehabilitation supervisor, because the vocational expert's

---

[9]    The Court will not address Plaintiff's claim -- alleged for the first time in his Reply -- that the ALJ failed to provide legally sufficient reasons for rejecting the opinions of Doctors Pagnini and Skewis (see Joint Stip. at 14).  See Fernandez v. Massanari, 12 Fed. Appx. 620, 621 (9th Cir. 2001) ("[I]t is well established in this circuit that the general rule is that appellants cannot raise a new issue for the first time in their reply briefs.") (quoting Northwest Acceptance Corp. v. Lynnwood Equip. Inc., 841 F.2d 918, 924 (9th Cir. 1988)).

In any event, Plaintiff's claim is conclusory.  Plaintiff has failed to allege who Drs. Pagnini and Skewis were, what their opinions were, or how the ALJ erred in rejecting their opinions.

testimony that those occupations would allow a person to alternate positions, upon which the ALJ relied, conflicted with the Dictionary of Occupational Titles ("DOT"). (See Joint Stip. at 15-24). Defendant asserts that the ALJ properly relied on the vocational expert's testimony because the DOT did not include information about a particular aspect of a job (such as the existence of a sit/stand option). (See Joint Stip. at 21-22).

As noted above, the ALJ found that Plaintiff had the capacities to stand and walk for 6 hours in an 8-hour workday with changing position every 30 minutes and to sit for 6 hours in an 8-hour workday with changing position every 1 hour.

At the initial hearing on September 25, 2012, the ALJ told the vocational expert to state whether his testimony conflicted with the DOT. The ALJ asked about the following hypothetical person -- 61 years old; four or more years of college; a range of light work; lifting, pushing and pulling 20 pounds occasionally and 10 pounds frequently; standing and walking 8 hours in an 8-hour workday; sitting 8 hours in an 8-hour workday; frequently walking on uneven terrain; occasional ladders, ropes, scaffolds and working at heights; occasional bending, kneeling, stooping, crawling, and crouching; no heavy machinery; and past work as a rehabilitation counselor and as a rehabilitation supervisor. The vocational expert testified that such a person could perform the work of a rehabilitation counselor (DOT 045.107-042,

Specific Vocational Preparation 8, skilled, sedentary) and a rehabilitation supervisor (DOT 045.117-010, Specific Vocational Preparation 8, skilled, light) as generally performed pursuant to the DOT and as actually performed by Plaintiff. (See AR 74-75).

At the supplemental hearing on March 13, 2013, the ALJ did not tell the vocational expert to state whether his testimony conflicted with the DOT. (See AR 38-44). The ALJ asked the vocational expert about the following hypothetical person -- 61 years old; 4 or more years of college; lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and walking 6 hours, with a change of position every 30 minutes; sitting for 6 hours, with a change of position every 1 hour; occasional walking on uneven terrain; no climbing of ladders, ropes or scaffolds; no working at heights; occasional bending, kneeling, stooping, crawling, and crouching; no heavy machinery; no vibratory types of tools or instruments; and past work as a rehabilitation counselor and as a rehabilitation supervisor. The vocational expert testified that such a person could perform the work of a rehabilitation counselor and a rehabilitation supervisor as generally performed pursuant to the DOT and as actually performed by Plaintiff. (See AR 38-39). The ALL then changed the hypothetical to include the same limitations except for a 10 pound lifting and carrying limitation. The vocational expert testified that such a person could perform the work of a rehabilitation counselor as generally performed pursuant to the DOT and as actually performed by Plaintiff. (See AR 40-41).

After finding that rehabilitation counselor and rehabilitation supervisor were past relevant work (see AR 25-26), the ALJ wrote:

> In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as actually and generally performed.  The evidence shows that the claimant has some limitations that prevent performance of certain activities.  However, these limitations would not prevent the claimant from performing his past relevant work as a rehabilitation counselor and supervisor as it was actually and generally performed.
>
> Even considering hypothetical number 2, which included all the limitations as stated in hypothetical number 1, with additional limitation that the hypothetical individual would be limited to 10 pounds, but the vocational expert testified that the claimant would still [be] able to perform his past relevant work as a rehabilitation counselor.

(AR 26).

Plaintiff correctly notes that the ALJ relied on the vocational expert's testimony at the supplemental hearing (at which the change of position for the sit/stand option was presented), but the ALJ did not question the vocational expert about whether his testimony concerning

the hypothetical person's ability to perform past relevant work as a rehabilitation counselor and as a rehabilitation supervisor was consistent with the DOT.  (See Joint Stip. at 16).

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, why it conflicts.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling 00-4p).

However, since the DOT for the jobs of rehabilitation counselor and rehabilitation supervisor (DOT 045.107-042 and DOT 045.117-010) do not address the sit/stand option, there was no conflict between the vocational expert's testimony and the DOT.  See e.g., Gilmour v. Colvin, 2014 WL 3749458, *8 (E.D. Cal. July 29, 2014); Stain v. Colvin, 2014 WL 2472312, *2 (C.D. Cal. June 2, 2014); Hirschy v. Commissioner of Social Sec., 2012 WL 996527, *11 (E.D. Cal. March 23, 2012); Harvey v. Astrue, 2010 WL 2836817, *14 (N.D. Cal. July 16, 2010); but see e.g., Hill v. Colvin, 2015 WL 5708465, *4-5 (C.D. Cal. September 29, 2015); McCabe v. Colvin, 2015 WL 1891764, *12 (D. Nev. August 10, 2015); Smith v. Astrue, 2010 WL 5776060, *11-12 (N.D. Cal. September 16, 2010); Valenzuela v. Astrue, 2009 WL 1537876, *3 (N.D. Cal. June 2, 2009).  Moreover, the vocational expert testified that the sit/stand option would not affect the ability of a rehabilitation counselor to do work, even when presenting to classes and seminars.  (See AR 43-44).  Therefore, the

ALJ's failure to ask the vocational expert whether his testimony conflicted with the DOT was harmless error.   See Massachi v. Astrue, supra, 486 F.3d at 1154, n. 19 ("This procedural error could have been harmless, were there no conflict, or if the VE provided sufficient support for her conclusion so as to justify any potential conflicts.").

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: December 23, 2015

                                    /s/
                              ALKA SAGAR
                        UNITED STATES MAGISTRATE JUDGE

23